All right, Mr. Henderson is in the courtroom, come on up, and I believe Ms. Boyle is on Zoom. There she is. Ms. Boyle, can you hear me? Yes, Your Honor. Thank you. Okay. You might have to adjust your camera a little. Ms. Boyle, we're getting like half your face. There we go. Thank you, Your Honor. Okay. Thank you very much. All right, Mr. Henderson, you may proceed. Thank you, Your Honor. May it please the Court, my name is Peter Henderson. I represent Jeremy Banks. The question is that in this case, is whether police officers may, without a warrant, sneak into your backyard, sneak along the side of your house, sneak to the side of your porch, order you not to go into your house and then tackle you as you attempt to do so. The plain answer to that is no. I think it's fair to say that the Supreme Court, under Florida v. Jardines, the Supreme Court couldn't be clearer that the Fourth Amendment's property-based protections prohibit a police officer from doing that. The property-based approach really was a paradigm shift in Fourth Amendment jurisprudence. So when we look to earlier cases, talking about expectations of privacy, et cetera, there's a lot of balancing involved. For example, the government relies a lot on United States v. Pace, a 1990 case, where the court is trying to balance the expectation of privacy on curtilage versus the police requirement that they act reasonably. And the Supreme Court said that's in addition to the property approach and couldn't be clearer in the last ten years. The United States v. Jones, Florida v. Jardines, Collins v. Virginia, Lang v. California, the Supreme Court keeps telling us you cannot enter the curtilage absent a warrant or some exception to the warrant requirement. Other than for, one exception would be a knock and talk. You can seek a consensual encounter with the homeowner, just as anybody might do. What is the best approach to understanding United States v. Richmond, which was a porch case post Jardines, that seems to authorize a Terry stop on curtilage and focuses mostly on the adequacy of the justification for the Terry stop and the adequacy of the justification for the frisk as opposed to the threshold question about whether the officers were lawfully present. There's a footnote about consent, and maybe that's the key to understanding the case. It is the key. So imagine a situation where instead of sneaking around through the backyard, the officers here had approached the porch, Mr. Banks was standing there, and they said, hey, can we talk to you? And he said, sure, that's fine. It's a consensual encounter. Mr. Richmond, you mean? Not Mr. Banks? Right. No, I'm trying to make our case. Oh, I see. I see. Okay. If that had happened here. If that had happened here, this would be a lot like Richmond. And if officers have some reasonable suspicion to believe, at that point, the gun wasn't on the grill anymore. I think it was in his pocket. But maybe there's a bolt in the pocket. At that point, Richmond says, you can take, in a consensual encounter, you can do a protective search. You can do a protective search. You're lawfully on the curtilage, et cetera. The problem is the facts, as they're described in Richmond, don't really describe the consensual encounter. They describe a pursuit by officers, and there was never a request for consent, can we come and talk to you? You know, there's no knock and talk, certainly, in the nomenclature of the case law. They just go up there, but the defendant in that case, and I go up there, I mean, go up on the porch when he's trying to retreat into his home, or at least, get the gun into his home, in that case. And I wondered about why the defendant in Richmond conceded that they were lawfully on the curtilage, myself. I think one reason why that concession may have been made is he might have said this was basically hot pursuit, that there was a Terry stop that was permissible on the public way when the police were pursuing him, and so you can't defeat, you can't defeat an arrest on the public way by retreating, for a felony offense, at least, for retreating. But it does seem like the majority has the footnote, the Richmond majority has the footnote that Chief Judge Sykes is referring to, and then I, obviously, there's a disagreement in the dissent, but Judge Wood, in her dissent, also notes the consent point. Right. So it seems to me that if the case is amenable to a construction, that the police were on the porch in Richmond because of consent, Terry doesn't need to do any work at all. That was Judge Wood's point, and that's why all of this discussion is dictated. You know what's odd to me about Terry is, if you look at Jardines and you look at Lange, Lange's the misdemeanor, the guy in the traffic violation, who flees to his garage or drives to his garage, there's not a citation to Terry in Jardines or Lange, and you would think the Supreme Court, if not, the Supreme Court knows about Terry very well that way, and so there's, and Lange is, Lange is full of reasonable suspicion. Right. But there's no reference to Terry anywhere. Right. I mean, the absence of any, you know, I think it was in Soldal where the court mentioned that, you know, if police aren't lawfully there in the first place, no amount of probable cause can justify a search or seizure. And I think underlying the assumptions in Collins and Lange and Jardines, as you mentioned, is this idea that the first question is, are you lawfully there? And that's the question that they're addressing in those cases. The secondary question is, okay, once you're lawfully there, what can you do? And that's the Terry question. That's the Richmond question. So I think probably that the Supreme Court doesn't mention Terry because it says, look, if you don't satisfy this baseline, you can't do anything. Yeah, in Jardines, you're not lawfully on the porch with a drug-sniffing dog. Right. Exactly. It doesn't matter. Mr. Henderson, how do we deal with Davis here? Okay. Davis versus, you know, here's what I'm, the reason I'm asking you this, okay, is the government has a fair point that Richmond says what it says that way. It has that language in it that we're trying to parse and figure out, but it has it in about Terry. Why couldn't there have been reliance upon that for the police conduct here that is saved by the reasoning in Davis? You know what I'm getting at? I know exactly what you're getting at. It's an objective standard. We know the police didn't actually rely on this. They testified that they had no idea about these cases. And so the objective test is in a contest between what the Supreme Court has said about entries onto curtilage and what the Seventh Circuit has hinted at in dicta in Richmond, I think the Supreme Court wins. Now, reasonable minds can differ. That's the whole point of the Tenth Circuit cases that the government cites, to say, you know, this issue is, I mean, it's not exactly Jardines. There are some differences. It's a different factual situation. I think the rule of law is the same. But, you know, reasonable officers might read these decisions and say, well, what can we do? But under Davis, why isn't the proper analysis that a police officer reading Richmond, Richmond is post-Jardines, reading Richmond would think, set aside the merits of it, that Terry would authorize entry on the porch given the reasonable suspicion they had from the Davis requires specific authorization. And so the most you could reach Richmond to say is that with consent, you can enter a porch and perform a Terry stop. That's what Richmond holds. If you went further than that, I would disagree with this reading, but you could say you can approach somebody from the front porch to perform a Terry stop. What Richmond doesn't authorize is sneaking around the back, sneaking onto the side and surprising somebody. It's sort of the flip side of qualified immunity. You can imagine the other way. If officers in Richmond said, well, sure, Banks said you can't sneak up from the back, but didn't say anything about a front porch entry, so we're entitled to qualified immunity. It has to be specific authorization. It's not just would a reasonable officer read it this way. Specific authorization is just that. Of course, we believe the government's weighed that argument and make it below, and there's no factual support to suggest the officers knew the law. But putting that aside, this really is a very simple case. As the Supreme Court noted in Collins, officers should not go on curtilage without a warrant to perform searches and seizures. It's that simple. Thank you very much. Thank you. Ms. Boyle. Good morning, Your Honors, Counsel. May it please the Court, my name is Katherine Boyle on behalf of the United States. The District Court here correctly denied Mr. Banks' motion to suppress. The police officers, Terry Stapp, Protective Patdown, and subsequent arrest of Mr. Banks were lawful under this Court's decision in United States v. Richmond, given that the officers in this case, as Banks admits, had clear reasonable suspicion that Banks had committed a crime. But even if they hadn't, as Your Honors noted, suppression wouldn't be warranted here because the officers were reasonably relying on existing precedent, both in Richmond and in prior cases like the Supreme Court's decision in Santana. Just to talk a little bit first about why the Terry Stapp and Associated Patdown were permissible. So, Ms. Boyle, before you go there, so if in this situation, assume that as the officers approach the porch, Mr. Banks told them, whoa, no, you can't come up here. You know, I invoked my Fourth Amendment rights to curtilage and you have to stop where you are. Would that take it, in your mind, out of what you perceive to be the holding in Richmond? Well, Your Honor, as they're approaching the porch, I believe under Richmond, in Richmond this Court specifically stated, it was a very clear statement that reasonable suspicion meant that the officers could be on the porch to conduct a Terry Stapp. So hold on for a second. So the government's position is that even if Mr. Banks said, hold it, you can't come onto my porch without a warrant, the government's position is that so long as the officer had reasonable suspicion, they could, despite that objection, still venture onto his porch and do what they did. Yes, Your Honor. That's correct. And other than Richmond, is there any other authority that you can cite to support that proposition? Well, I think when we go back to, I think Sosa, the Tenth Circuit opinion, has a really interesting discussion of United States versus State. That's a qualified immunity case. That doesn't apply here in this context. Yes, Your Honor, it is a qualified immunity case. I do think the discussion is relevant, particularly when you look at United States versus Santana itself, in which the police went up to the porch to seize an individual who was suspected of drug trafficking. It's a very similar situation. Santana has not been overruled in the years since, despite an increasing focus on property rights analysis as well. And I believe the Court's decision in Richmond reflects that. Santana is a hot pursuit case? Santana does involve hot pursuit because the officers ended up following the defendant into the vestibule of her home, but it also involves them going onto the porch to effect a seizure. But hot pursuit is an established exception. You can't fit this case into the hot pursuit exception as a factual matter. Yes, Your Honor, although I think the hot pursuit in Santana was particularly focused on following her into the vestibule. And we do believe here that they also discuss in Santana how the defendant was on the porch in public view and that there were potentially . . . Yes, Your Honor, although . . . That's considered the boundary of his home. Officers can't evade that. We agree that . . . It's not at all like Santana. That suspect was being pursued from a public space into a private space. That's very different from what is at issue here. Well, I believe the suspect in Santana was standing on the porch at the time officers approached her, Your Honor. But to your point . . . There was no pursuit before that? Well, my understanding is a drug transaction had just occurred. There was an undercover officer in the car with the individual who had conducted the drug transaction. The person returned to the car with the drugs. The undercover officer revealed his identity. And then the officer asked essentially for more details on the transaction and where the money was. The individual said that Mom Santana had it, which was back at the prior residence where the transaction had occurred. The officer went back to the residence and saw Mom Santana on the porch and decided to effect a seizure. And then when she started going into the vestibule, followed her for reasons of hot pursuit. Well, can we go back to Richmond real quick? Yes, Your Honor. Okay. Do you agree that the Richmond opinion, just reading it, reading the majority and reading the dissent, establishes that Antoine Richmond consented to the police being on his porch? Forget Terry for a minute. Just ignore Terry. We'll come to it. Do you read the opinion that way, that yes, both the majority and the dissent seem of the view that on the facts there, Antoine Richmond consented? Mr. Richmond's position had changed on that point. I believe he initially suggested that he once said there was consent and then changed his mind on that. It may have. Just focus on the opinion we issued. Yes, Your Honor. The opinion contains a clear statement that I don't think the opinion relies on any alleged consent by Mr. Richmond. The opinion contains a specific statement saying that the officer's reasonable suspicion, you know, from an objective standpoint, justified their entry onto the porch. And that to me suggests that his consent was not a linchpin to the opinion, given how clear that statement is. Okay. Your Honor, I'd like to also address just briefly the point on the backyard. If we move on from the point as whether the Terry stop is permissible under Richmond, defense counsel has tried to suggest here that the backyard somehow makes this an impermissible interaction, even if it would otherwise be permissible if they had just walked straight up the front walk. And I really do think in this case that approaching through the backyard is a safety measure. It's similar to the idea of a pat down. The officers are approaching a known felon who has a firearm and the going through the unfenced backyard on an alley is really is really aimed at preserving officer safety in these circumstances. That is something that has been approved by the court in in different circumstances, but that have some that can apply that can apply in certain ways here as well. For instance, officers can do a protective sweep while they're obtaining a warrant. So there are the courts have previously decided that certain certain incursions on privacy are permissible where there is a need for the officer's protection as well. Miss Boyle, would you extend that reasoning? Say if the officers had because they had concern for the protection that entered the house and went up and were right behind the front door, just in case something happened as a matter of protection, would that rationale also apply? No, Your Honor. I don't I think it's a little bit different. And if so, given the Supreme Court's rather, you know, the the line of cases that talk about curtilage being basically equivalent to one's dwelling. How do you how would you make the principal distinction between an officer entering into your backyard in order for to promote protection versus they're entering into the home and going further and just making sure that everything everyone would be safe? It's a good question, Your Honor. Certainly, the courts have said that curtilage in the home enjoy equal protections under the Fourth Amendment. That said, there have been situations such as for the knock and talk exception where the where curtilage has been treated a little bit differently. And, you know, in Richmond, we believe that was another situation where curtilage is being treated a little bit differently and showing that the Terry staff is permissible here. And that's for a lot of good reasons. That's because you're looking at. So do you think that the court should create a new rule that police officers can go onto someone's curtilage if they have concerns about security and safety? You would need reasonable suspicion to affect a Terry staff to go onto a front porch. In addition to sort of concurrent with your concerns about safety, you wouldn't be able just to go out because you had an amorphous concern about safety. What if it was a screen porch and not an open air porch? Would the officers be permitted under Richmond to open the door of the screen porch and enter into the screened in area to effectuate this warrantless arrest? That would be a different and more concerning situation than we have here. That would also. It's curtilage. It's not the it's not the interior of the home. It's still the curtilage. Well, yes, your honor. It's just a little picket fence that has a little gate. But it's still open air support with a little picket fence in the gate. Can they open the gate and go in and get him without a warrant? Your honor, I believe that this court's opinion in Richmond would permit that sort of Terry stop on a porch, particularly. And one of the reasons for that is when you have somebody, say, with a firearm on a public way, that is more dangerous than somebody who has a firearm in their kitchen. So you have somebody here who is right by a public roadway, has the firearm on the side of the grill closest to the street. And then, of course, this this case also has the amplification that he's posting about it on Snapchat to to any number of people, including law enforcement, as it turned out. And I see I'm running out of time. I would just like to, if possible, briefly make the point that regardless of the decision on the permissibility of Terry stops on curtilage, this is a case where Davis should absolutely apply. The officers here could clearly rely on the very direct statement in Richmond and additional case law that we've discussed today to say that to believe that this conduct was permissible. There is no reason to there's no there's no objective to deter police misconduct here, given that the officers were not trying to engage in misconduct. They were trying to follow the law. They were trying to do the right thing. They were trying to do good investigative work. And they were trying to conduct a Terry stop of a felon with a firearm who was broadcasting it on the on the Internet. Thank you. Thank you. Thank you, Mr. Henderson. A lot of the government's argument relies on these sorts of balancing concerns, which we used to do under the Fourth Amendment before United States versus Jones said, look, those balancing privacy expectations of privacy, what's exposed to the public view, all of that is secondary to whether this search occurred on a protected area and whether officers were entitled to enter that protected area. And the Supreme Court keeps telling us you need a warrant or you need an exception to the warrant. The only relevant exception here is the knock and talk exception. And the Supreme Court has delineated what that means. It doesn't mean sneaking through the backyard. It means literally under Jardines approaching from the front path, seeking a consensual encounter, knocking on the door, seeing the homeowner and talk to them. And if they refuse, you leave the French versus Merrill case. I think that we cited the officers did just that, except they kept pounding. And the court said, you don't get qualified immunity. You have to leave. So this case really is very straightforward. Well, you know, in fairness, the curtilage cases do kind of come out all over the map and point in different directions about the strength of the protection and curtilage and whether there's room for reasonableness balancing. And maybe that's all implicitly overruled by Jardines. I think it has to be. I mean, it's what happened in Collins versus Virginia where we said, well, we've got the option of the exception. The court said, yeah, you're on curtilage, though. You need something separate. There's a separate interest. So unless police officers are lawfully on the curtilage, as they were in Richmond, they are not permitted to search and see somebody who's protected by the Fourth Amendment in his home. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.